UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AZUREE RATLIFF,

                Plaintiff,                Case No. 4:05-CV-104

v.                                             HON. GORDON J. QUIST

CITY OF THREE RIVERS,
COREY SMITH, Individually and in his
official capacity as a police officer for the City
of Three Rivers,
ELAINE SMITH, Individually and in her
official capacity as a police officer for the City
of Three Rivers,
DEBRA CLAWSON, Individually and in her
official capacity as a police officer for the City
of Three Rivers,

                Defendants.
_____/

## OPINION

Plaintiff, Azuree Ratliff, filed a complaint against the Defendants, the City of Three Rivers, Officer Corey Smith, Officer Elaine Smith, and Officer Debra Clawson, pursuant to 42 U.S.C. § 1983, alleging violations of her Fourth Amendment rights, as well as various claims under Michigan state law. Now before the Court are the Defendants' motion for summary judgment and the Plaintiff's motion for summary judgment. For the following reasons, the Court will grant the Defendants' motion for summary judgment on Counts I and II, deny the Plaintiff's motion for summary judgment on Counts I and II, and dismiss her state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## I. Background

At approximately 7:00 a.m. on April 1, 2004, an armed robbery occurred at the Broadway Market in the City of Three Rivers, Michigan. Police dispatch informed officers that the suspects had fired shots during the robbery and were carrying long guns. Witnesses described the armed robbers' vehicle as a white four door Chevy Caprice or similar model. The vehicle was last seen driving south from the Broadway Market. There was no police pursuit of the vehicle.

Sometime before 7:30 a.m., an officer located a vehicle matching the description of the vehicle used in the robbery at the Plaintiff's residence. The Plaintiff's residence was located north of the Broadway Market. The Plaintiff's residence is located near a school and there were children walking to school in the area. Police officers were dispatched to the Plaintiff's residence to set up a perimeter. Police officers armed themselves and took positions behind their vehicles.

Officer Corey Smith arrived with Brian Langston, a witness to the robbery, and Langston positively identified the vehicle at the Plaintiff's residence as the vehicle used in the robbery.[1] (Corey Smith Dep. at 14; Elaine Smith Dep. at 22; Jorge Dep. at 9.) The officers confirmed that the vehicle was registered to the Plaintiff. About this time, police dispatchers called the Plaintiff's residence and made contact with the Plaintiff, who was in her residence with her husband and baby. The Plaintiff informed the dispatcher that no one had used her car, as it was inoperable. The dispatcher asked the Plaintiff to go downstairs and make contact with the police officers standing outside of the residence's door. The officers on the scene were not aware of the content of the conversation between the Plaintiff and the dispatcher.[2]

---

[1] This positive identification would later prove to be incorrect.

[2] Defendant Clawson's incident report noted that central dispatch made several calls to the residence, but Clawson does not recall speaking to central dispatch prior to the search regarding the communications between dispatch and the Plaintiff. (Clawson Dep. at 28-30.)

2

When the Plaintiff opened the door, a code enforcement officer, with a gun pointed at the Plaintiff, ordered the Plaintiff to come out with her hands up. The Plaintiff did not come out of the house, but instead went back upstairs and asked her husband to go downstairs and find out what was going on. Plaintiff's husband exited the house. When Plaintiff's husband did not return, the Plaintiff, carrying her baby, went downstairs and exited the residence. At this point, the police asked the Plaintiff if there was anyone else in the residence, to which the Plaintiff responded, "No." The Plaintiff was not told that she was under arrest; nor did police ever search her or touch her, although she was not permitted to go back into the residence until the search was completed. (Ratliff Dep. at 44-45.) At the Plaintiff's request, an officer permitted the Plaintiff to sit in the back of a police car with her baby in order to stay warm.

With the Ratliffs out of the residence, Officer Clawson and Officer Elaine Smith prepared to search the residence for the armed robbery suspects. No search warrant was issued for the entry and search of the Plaintiff's residence, nor did the officers ask for or obtain consent from the Ratliffs to search the residence.

After Officer Clawson and Officer Elaine Smith entered the residence, they requested an additional officer for safety purposes. Officer Corey Smith responded and entered the residence. During the search, the officers at the residence received a report from dispatch that the robbery suspects' vehicle had possibly been located at Bent's garage, which was located south of the Broadway Market. Sometime following the search, Officer Clawson touched the hood of the Plaintiff's vehicle and noticed that it was cold, indicating that the engine had not recently been running.

Once out of the Ratliff residence, Officer Corey Smith drove Langston to inspect the second possible suspect vehicle. Upon seeing the vehicle at the garage, Langston recalled that the armed

3

robbers' vehicle was missing a Chevrolet emblem, consistent with the car at the garage. This also distinguished the second vehicle from the Ratliff's vehicle. Langston positively identified the car at the garage as the suspects' vehicle.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

**A.** **Unlawful Search Claim**

    **1.** **Reasonableness of Search**

A "basic principle of Fourth Amendment law" is that "searches and seizures inside a house without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980). A warrantless search may be legal, however, if probable cause exists and the search is deemed reasonable because it arises under one of the exceptions to the warrant requirement. *Brigham City v. Stuart*, 126 S. Ct. 1943, 1947 (2006) ("[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions.").

4

The parties do not contest that the Defendants had probable cause. The Defendants argue that the search was reasonable because exigent circumstances justified a warrantless search.

The Supreme Court has determined that warrantless searches may be reasonable if "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City,* 126 S. Ct. at 1947. In determining whether sufficient exigent circumstances exist to justify a warrantless search, a court must "consider the totality of the circumstances and the 'inherent necessities of the situation at the time.'" *United States v. Rohrig*, 98 F.3d 1506, 1511 (6th Cir. 1996) (quoting *United States v. Johnson*, 9 F.3d 506, 508 (6th Cir. 1993)). Exigent circumstances exist when there is a "need for prompt action by government personnel" such that the delay in securing a warrant "would be unacceptable under the circumstances." *United States v. Plavcak*, 411 F.3d 655, 663 (6th Cir. 2005). A court must "balance the interests by weighing the governmental interest being served by the intrusion against the individual interest that would be protected if a warrant were required." *Id.* at 664. "While it is not possible to articulate a succinct yet exhaustive list of circumstances that qualify as 'exigent,'" there are four general categories in which warrantless entries may be justified: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Rohrig*, 98 F.3d at 1515.

The Defendants assert that the warrantless search here was reasonable based on the "risk of danger" exigency.[3] For the risk of danger exigency to apply, the Defendants must show that there was "a risk of serious injury to the officers or others that required swift action." *United States v. Huffman*, 461 F.3d 777, 783 (6th Cir. 2006).

---

[3]The Defendants do not contend that the hot pursuit of a fleeing felon exception applies, as it is undisputed that no officers followed the suspects from the scene of the crime to the Plaintiff's residence.

5

The Defendants point to seven facts known to the officers at the time of the search in support of their contention that there was a risk of danger. (Defs.' Br. in Supp. Mot. Summ. J. 11-12.) First, an armed robbery had occurred at the Broadway Market within an hour of the search of the Plaintiff's residence. Second, the suspects were armed with long guns. Third, the suspects had fired shots during the robbery, indicating a willingness to use their weapons. Fourth, a vehicle matching the description of the one used in the robbery was found at the Plaintiff's residence. Fifth, a witness to the robbery positively identified the car located at the Plaintiff's residence as the one used in the robbery. Sixth, the Plaintiff's residence was located in proximity to school bus routes, a school bus stop, and children walking to school. Finally, police dispatch contacted and spoke with the Plaintiff, but the Plaintiff disconnected the call and did not answer subsequent calls from dispatch.[4]

Furthermore, the Defendants argue that the police presence at the Plaintiff's residence did not decrease the potential danger to police or citizens. Because the armed robbers, had they been inside the residence, could have shot at the police or citizens from within, the Defendants argue that the risk of danger required that the Defendants determine if the armed robbers were inside the residence and, if so, neutralize the threat.

The Plaintiff relies on two Sixth Circuit cases, both addressing motions to suppress evidence, for the proposition that the Defendants' act of entering and searching the Plaintiff's residence constituted an unconstitutional search. First, in *United States v. Morgan*, 734 F.2d 1158 (1984), police officers responded to a complaint that people were firing guns in a public park. The Sheriff went to the location and asked the individuals, including Morgan, to leave. The individuals were already loading the guns into a car, and they expressed their compliance. As the Sheriff was leaving,

---

[4] The Plaintiff and the Defendants dispute whether the Defendants were unaware of the communications between central dispatch and the Plaintiff. (Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. 2; Defs.' Reply Br. in Opp. to Mot. Summ. J. 1-2.) For purposes of these motions, the Court will assume that the Defendants were unaware of the communications.

an unknown observer approached the Sheriff's car, stated that the individuals had commented that they would kill any lawmen who tried to arrest them, and suggested that the Sheriff leave and get help.  The Sheriff left, called for backup, and was able to track down the location of the vehicle.  Another officer followed the vehicle to Morgan's mother's house where the officer observed the individuals taking guns from the trunk into the house.  The officer continued to monitor the house and saw no suspicious or threatening activity.

In the meantime, the Sheriff and other officers met at a coffee shop to assess the situation and wait for the arrival of additional officers.  The Sheriff did not attempt to get a search warrant.  Approximately one to two hours after the initial confrontation with Morgan, the Sheriff and other officers surrounded the Morgan house and ordered him to come out.  Morgan came out carrying a gun, which he put down, and was immediately arrested.  After ordering everyone else from the house, the officers conducted a search which revealed one illegal pistol.  The Sixth Circuit affirmed the district court's grant of Morgan's motion to suppress because there were no exigent circumstances justifying the warrantless entry.  Specifically, the court stated that this was not a situation where Morgan posed a threat to the officers or the public, as his "prior contact with police officials had been friendly and cooperative," there was no evidence "that Morgan was dangerous or that a grave offense or crime of violence had occurred," and police officers could point to no evidence, other than the unsubstantiated threat communicated to the Sheriff by an unknown bystander, that Morgan was a threat to the police or public.  *Id*. at 1163.

The second case cited by the Plaintiff, *United States v. Saari*, 272 F. 3d 804 (6th Cir. 2001), based its analysis on *Morgan*.  In *Saari*, police responded to a report that shots were fired at a residence.  Upon arrival, Saari's ex-wife informed police that no shots were fired, but that Saari had stood outside of her window holding a pistol.  Mrs. Saari informed the officers that Saari was armed

at all times and an unknown source told police that Saari possessed explosives. Officers went to Saari's apartment, announced their presence, and asked Saari to come out. When Saari came out, officers asked him if he was armed and he responded affirmatively. Officers then removed the gun from his waistband and handcuffed him. The officers then, without a warrant, searched the apartment in spite of Saari's objections. The officers discovered rifles which they removed two days later pursuant to a warrant issued on the basis of their observations at the time of Saari's arrest.

The Sixth Circuit affirmed the district court's suppression of the gun Saari had in his waistband. The court stated that "[t]his case is, in all relevant aspects, indistinguishable from *Morgan*." *Id*. at 808. In rejecting the government's claim that Saari created a risk of danger, the court discussed the trial court's finding that Saari was peaceably occupying his house, that there was no indication that anyone inside was being threatened, and that "'[t]he unsubstantiated information about explosives by an unidentified person was too vague and general to constitute an immediate threat to the safety of the officers and the public.'" *Id*. at 810 (quoting *United States v. Saari*, 88 F.Supp.2d 835, 848 (W.D. Tenn. 1999)).

*Morgan* and *Saari* are distinguishable from this case. In both *Morgan* and *Saari*, there was little or no evidence that the suspect sought by police posed a risk to police or others. Morgan's group had been illegally firing guns in a public park. However, the alleged threat against law enforcement officers was not made directly to the Sheriff, but was reported by an unknown individual. There was a one to two-hour period between the Sheriff's first observation of Morgan and Morgan's subsequent arrest. The *Morgan* court noted that Morgan's initial contact with police was "friendly and cooperative." *Morgan*, 743 F.2d at 1163. Likewise, in *Saari*, Mrs. Saari told police that Mr. Saari had not fired any shots but that he stood by the window holding a pistol and that he was always armed. The warrantless search and seizure of Saari's apartment was based on these

8

facts alone, which did not rise to the level of an exigent circumstance justifying a warrantless search and seizure.

In the instant case, the police were seeking suspected armed robbers who had fired shots at people while perpetrating the robbery. Within thirty minutes of the robbery, the police located a vehicle matching that of the suspects at the Plaintiff's residence, and an identified witness to the crime identified the vehicle as that used in the robbery. Police quickly arrived at the residence, established a perimeter, determined who would conduct the search, and began the search between thirty minutes and an hour after the robbery. Unlike in *Morgan*, there was evidence that a "grave offense or crime of violence had occurred." *See Morgan*, 743 F.3d at 1163. The Defendants' actions were not in response to an unsubstantiated report that the suspects had merely threatened police officers, but rather, were in response to an armed robbery during which the suspects fired shots at citizens. Also in contrast to the cases cited by the Plaintiff, the Defendants did not attempt to arrest the Plaintiff, but were searching for and seeking to arrest the armed robbery suspects.

The Defendants cite one Supreme Court and several Sixth Circuit cases in support of their claim that the entry was justified by exigent circumstances. *See Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-99 87 S. Ct. 1642, 1645-46 (1967) (finding exigent circumstances existed when officers entered a house without a warrant looking for an armed robbery suspect after witnesses informed the officers that the suspect ran into the particular residence less than five minutes before the officers' arrival); *United States v. Bates*, 84 F.3d 790, 795-96 (6th Cir. 1996) (finding that no exigent circumstances existed to excuse the knock and announce requirement when the suspect in the apartment was not known to be armed, was not known to be violent, but a witness had merely reported the presence of a handgun in the apartment); *Ewolski v. City of Brunswick*, 287 F.3d 492 (6th Cir. 2002) (finding that a warrantless entry was justified because officers could have

reasonably concluded that the suspect, located in his house, was an immediate threat to his family where (1) he was not on his prescribed medication, (2) he threateningly brandished weapons in front of his home health care personnel, (3) he informed his brother the night before that his guns were "loaded and ready," (4) he kept his son home from school, and (5) his wife inexplicably asked to be put in a nursing home that morning); *United States v. Bass*, 315 F.3d 561 (6th Cir. 2002) (finding that both hot pursuit of a suspect and exigent circumstances exception applied where police were informed by a witness that the suspect had fired shots with a gun and was observed fleeing into a particular apartment in a nearby building within minutes of the arrival of the police).

The Sixth Circuit has also found that "[t]he presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent." *United States v. Bates*, 84 F.3d 790, 795-96 (6th Cir. 1996) (finding that no exigent circumstances existed to excuse the knock and announce requirement when the suspect in the apartment was not known to be armed or violent, but a witness had merely reported the presence of a handgun in the apartment). In *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996), the court granted qualified immunity to officers on the basis that it was reasonable to believe that someone was in the house and in immediate peril of bodily harm due to the presence of a firearm and the suspect's demonstrated willingness to use the weapon. The police in *Dickerson* were responding to a call that the suspect had fired shots in his house and was screaming. Upon arrival, the police did not notice anything suspicious, but heard a loud male voice and saw a telephone cord stretched in the direction from where the voice was emanating. The officers then made an unannounced forcible entry. In making its determination, the court cited *Bates* for the proposition that the presence of a weapon creates an exigent circumstances when officers know that the suspect is willing to use that weapon. The court noted that "[i]t was not unreasonable

10

for the officers to conclude that the firing of nine gunshots suggests a willingness to use a weapon." *Id*.

The Defendants also rely on *Causey v. City of Bay City*, 442 F.3d 524 (6th Cir. 2006). In *Causey*, the court found that the officers conducting a warrantless entry into the plaintiffs' residence were entitled to qualified immunity because they "reasonably suspected that immediate police action was necessary to ascertain whether someone inside the house was in peril." *Id*. at 529. This suspicion was based on a report that shots had been fired from the residence, a 911 call was made from the residence, and someone claimed that a child made the call even though no children were thought to be inside. Furthermore, the court found that the fact that the plaintiffs told police when they arrived that there was no emergency and there were no signs of violence did "not render it unreasonable for the officers to continue believing that someone inside needed their aid." *Id*. at 530.

Similarly in the instant case, the Plaintiff argues that because she told both the police dispatcher and the officers on the scene that no one was in the house, the Defendants had no reason to believe that exigent circumstances existed. However, the Sixth Circuit has determined that an occupant's assertions to police are not dispositive in determining whether an exigency may exist:

> Although the officers might have inferred that an exigency did not exist from the plaintiffs' assurances that no one was injured, it was nevertheless "equally plausible and not unreasonable," for the officers to infer that either (1) the plaintiffs were concealing another person (perhaps incapacitated by the gunshots) inside the house or (2) the plaintiffs were being intimidated to give assurances by an unseen attacker in the residence.

*Id*. (quoting *Dickerson*, 101 F.3d at 1160) (internal citations omitted).

Even though the Defendants have established that they reasonably concluded that the armed robbery suspects in this case, like the plaintiffs in *Causey* and *Dickerson*, had shown a willingness to use their weapons, the question remains whether the Defendants acted reasonably in entering the

11

residence without a warrant. The Defendants have not shown that a risk of danger existed at the time of the search such that the exigent circumstance exception to the warrant requirement would apply.

Unlike the cases cited by the Defendants, here there was no report of shots fired from the house and no indication that the suspects were in the residence. The Defendants did not receive any report that the suspects fled to the Plaintiff's residence, but acted solely based on the presence of a white Chevrolet Caprice matching the description of the suspects' vehicle and positively identified by a witness to the robbery. Although several of the cases cited by the Defendants involved situations where the police arrived and saw nothing unusual or were informed by occupants that nothing was amiss, in those cases the police were directed to the residences by occupants or neighbors witnessing criminal or suspicious activity. The combination of those factors, coupled with the demonstrated willingness of the occupants to use weapons, created exigent circumstances. Here, however, the Defendants have not demonstrated that the combination of all of the factors was sufficient to justify a warrantless search based on a danger to the police or others. There had not been any indication that exigent circumstances existed in the Plaintiff's residence, as no shots were fired from within, no 911 calls were made from within, and there was no report by neighbors or witnesses of suspicious or illegal activity within the house or on the premises. In the instant case, the Plaintiff's right to be free from illegal seizures was not outweighed by the government's interest in searching the house for armed robbery suspects where the only evidence of the crime located at the residence was a car identified as that used in the robbery and there was no evidence that there was a risk of danger at the residence. Therefore, the Court concludes that the Defendants violated the Plaintiff's Fourth Amendment right against unlawful searches.

### 2. Qualified Immunity

To determine whether a defendant is entitled to qualified immunity, a court must engage in a two-step analysis. A court must first determine whether the defendants violated an actual constitutional right and, if that is found, determine whether the right was clearly established at the time of the violation. *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295 (1999). In other words, the court must decide whether the defendants are entitled to qualified immunity because it would not "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2157 (2001). In this case, qualified immunity is not defeated simply because the Defendants violated the Plaintiff's Fourth Amendment rights by conducting an unlawful search of her residence. The right that the Defendants violated "must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3034 (1987)). The Supreme Court has

> recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials - like other officials who act in ways they reasonably believe to be lawful - should not be held personally liable. The same is true of their conclusions regarding exigent circumstances.

*Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 3039-40 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98 (1986)).

The Plaintiff relies on *Morgan* and *Saari* for the proposition that the law was clearly established at the time of the search such that the Defendants are not entitled to qualified immunity. Plaintiff argues that these two cases clearly hold that once the police surround a suspect's house and there are no shots fired from within the house, there can be no exigent circumstances for entering

13

the house without a warrant.  Therefore, Plaintiff concludes, these cases put the Defendants on notice that their actions violated clearly established constitutional rights.  As discussed previously, neither of these cases is directly on point.

The Defendants argue that the law was unclear and highlight the disparity of cases and the fact that there is no case directly on point.  The Defendants cite cases relied on for their claim that the search was reasonable for the proposition that the law was unclear and a reasonable officer could have believed that exigent circumstances existed under the law.  *See Warden Md. Penitentiary v. Hayden*, 387 U.S. 294, 298-99, 87 S. Ct. 1642 (1967); *Dickerson v. McClellan*, 101 F.3d 1151, 1158-60 (6th Cir. 1996); *United States v. Bates*, 84 F.3d 790, 795 (6th Cir. 1996); *Ewolski v. City of Brunswick*, 287 F.3d 492, 502 (6th Cir. 2002); *United States v. Bass*, 315 F.3d 561, 564 (6th Cir. 2002).

The Court agrees that the law was not clear to a reasonable officer on April 1, 2004, that his actions, under the circumstances, violated the Plaintiff's clearly established rights.  A reasonable officer could have concluded that the circumstances justified a warrantless search of the residence to apprehend the suspects.  The suspects were known to be armed and had shown a willingness to use their weapons against civilians, a factor that courts have found supports an officer's belief that exigent circumstances exist.  *See Dickerson*, 101 F.3d at 1160 ("The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent." (quoting *Bates*, 84 F.3d at 795)). This willingness potentially constituted a threat to officers and bystanders, including the occupants of the Plaintiff's residence or the children the Defendants observed nearby.  There was a close proximity in time between the robbery and the search.  A witness positively identified the car in the Plaintiff's driveway as that used in the armed robbery.  Finally, the Plaintiff's statement that

14

there was no one else in the residence is not dispositive and it was "equally plausible and not unreasonable" for the Defendants to believe that an exigency existed despite the Plaintiff's assertion. *Id*. Based on the circumstances known to the Defendants, in conjunction with the clearly established law as of April 1, 2004, a reasonable officer could have concluded that a warrantless entry of the Plaintiff's residence was permitted under the exigent circumstances exception. Therefore, the Defendants' actions are protected by qualified immunity on the unlawful search claim.

**B.     Unlawful Arrest**

The Plaintiff claims that the Defendants arrested her when they ordered her out of her house with their guns drawn. The Plaintiff stated that the Defendants never told her she was under arrest and never touched or searched her. The Plaintiff indicated that she was free to move around and was allowed, at her request, to sit in a police vehicle to stay warm. The Plaintiff's sole basis for her unlawful arrest claim is the Defendants' ordering her out of the house at gunpoint.

In support of her claim, the Plaintiff again relies on *Morgan* and *Saari*. However, in those cases, the plaintiffs were the suspects sought by police and the officers acted with the specific intention of arresting the plaintiffs by searching for those individuals, placing them in handcuffs, and informing them that they were under arrest. The Plaintiff in the instant case was not a suspect and was ordered out of her house so that the Defendants could conduct a search for suspected armed robbers.

Law enforcement officers conducting a lawful search of a residence have the authority to detain occupants while the search is being conducted to minimize the risk of harm to the officers and to facilitate the search. *Michigan v. Summers*, 452 U.S. 692, 702-03, 101 S. Ct. 2587, 2594 (1981). Although the *Summers* Court stressed the fact that the officers possessed a valid search warrant issued by a neutral magistrate, the Sixth Circuit has determined that "where an intrusion is justified,

15

whether by warrant or by probable cause and exigent circumstances, police are temporarily placed in control of the premises and its occupants" and may detain the occupants while a search is conducted. *Bills v. Aseltine*, 958 F.2d 697, 704 (6th Cir. 1992). The distinction between officers searching pursuant to a warrant rather than based on probable cause and exigent circumstances "would not make a protective sweep any less necessary or prudent." *Id*. *See United States v. Elkins*, 732 F.2d 1280, 1285 (6th Cir. 1984) (finding that where a warrantless entry was justified by exigent circumstances, the officers were "required to secure all persons therein and to make a protective sweep . . . for the safety of all concerned").

The Court has found that the Defendants could have reasonably believed that a warrantless search was permitted due to exigent circumstances. In light of the clearly established law which permits police officers conducting a warrantless search of a residence due to exigent circumstances to detain the occupants for safety reasons, the Defendants could have reasonably believed that the detainment of the Plaintiff was permitted under the circumstances. Therefore, the Defendants are protected by qualified immunity because they reasonably believed that they were lawfully searching a house due to exigent circumstances and, therefore, authorized to detain the occupants for safety reasons during the search.

**C.     Excessive Force**

The Plaintiff claims that the Defendants' act of pointing their guns at her as she exited her residence constituted excessive force. An officer's use of force must be objectively reasonable in light of the facts and circumstances confronting him and without regard to his underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 1872 (1989). Thus, the Plaintiff's excessive force claim requires a determination whether the totality of the circumstances

justified the Defendants' conduct in effectuating the Plaintiff's exit from her residence. *See Collins v. Nagle*, 892 F.2d 489, 496 (6th Cir. 1989).

The Plaintiff testified that as she exited the residence, the Defendants had their guns pointed towards her house. The Defendants did not make physical contact with the Plaintiff, but asked her to exit the house and inquired whether anyone else was still in the house. The Sixth Circuit, addressing an unlawful arrest claim, found that "when police officers reasonably fear that suspects are armed and dangerous, they may order the suspects out of a car and may draw their weapons when those steps are 'reasonably necessary for the protection of the officers.'" *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 814-15 (6th Cir. 1999) (quoting *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir.1993)). Several courts have determined that pointing a gun in the direction of a suspect or occupant is insufficient to sustain a claim of excessive force. *See Collins*, 892 F.2d at 497 (in the context of an arrest, an officer's pointing of his gun at an approaching bystander whose intentions were unknown did "not rise to the level of a constitutional violation" based on excessive force); *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995) (an officer's "conduct in drawing his gun and pointing it at [a suspect], without any indication [the officer] intended or attempted to fire the gun, does not rise to the level of a constitutional violation"); *Smith v. Ortiz*, No. 01 Civ. 5848(DAB), 2006 WL 1458404, *5 (S.D.N.Y. May 25, 2006) (finding that the plaintiff failed to state an excessive force claim where he alleged that the officers had "their weapons and guns drawn," there was no struggle, and he suffered no physical injuries during his arrest).

The Defendants believed that armed robbery suspects, who had fired shots during the commission of the crime less than an hour earlier, could be within the Plaintiff's residence, based on a witness' positive identification of the suspects' car in the Plaintiff's driveway. The Defendants had their guns drawn for their safety, as they were unaware of who was in the residence and who may

17

be exiting through the door. The Plaintiff conceded that the Defendants were not aware of the content of the communications between the Plaintiff and the dispatcher, and, therefore, unaware of what was taking place inside the residence. (Pl.'s Br. in Opp. to Defs.' Mot. Summ. J. 2.) Once out of the residence, the Defendants never touched the Plaintiff, and she was free to move around. Based upon the information available to the Defendants at the time, the Court concludes that the Defendants used objectively reasonable force in removing the Plaintiff from her residence.

### D.    Municipal Liability

The Plaintiff concedes that she is not pursuing her claim against the City of Three Rivers. Therefore, the City is entitled to summary judgment.

### E.    State Law Claims

Having concluded that the Plaintiff's federal claims should be dismissed, the Court must determine whether it should retain jurisdiction over the Plaintiff's state law claims. "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)). In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (affirming district court's order granting summary judgment on federal claim and dismissing state law claims without prejudice). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson*, 89 F.3d at 1254-55 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 619 n.7 (1988)). Having dismissed the Plaintiff's

18

federal claims, the Court concludes that the state law claims should be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. Conclusion

For the foregoing reasons, the Court will grant the Defendants' motion for summary judgment on Counts I and II, deny the Plaintiff's motion for summary judgment on Counts I and II, and dismiss the Plaintiff's state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An Order consistent with this Opinion will be issued.


Dated: February 9, 2007 　　　　　　　　　　　　　　　　/s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE